**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

LAMONT BEASLEY (DORIAN),

   Plaintiff,

   v.

CHRISTOPHER MOZINGO,

   Defendant.

Civil Action No.: PWG-20-387

**MEMORANDUM OPINION**

In response to this civil rights complaint, Defendant Christopher Mozingo, a former correctional officer at Maryland Correctional Training Center ("MCTC"), moves to dismiss the complaint or alternatively for summary judgment in his favor. ECF No. 22. The motion is opposed by self-represented Plaintiff Lamont Beasley. ECF No. 28. No hearing is necessary to determine the matters currently pending. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, Defendant's motion, construed as a Motion for Summary Judgment, shall be denied.

**Background**

**I.**   **Complaint Allegations**

The complaint concerns Mr. Beasley's allegation that on July 17, 2019, he was assaulted by Defendant when he worked as a correctional officer at MCTC in Hagerstown, Maryland, where Mr. Beasley was then incarcerated.[1] Mr. Beasley claims that he exchanged words with Officer Mozingo at approximately 12:30 p.m. when Mr. Beasley was returning from a pass, asking Officer Mozingo if he could have a sanitation job. ECF No. 1 at 4. Mr. Beasley claims that Defendant told him that he was "not giving [his] bitch ass a job." *Id*. He claims Officer Mozingo grabbed him by the throat and punched him in the face twice with a closed fist. *Id*. Mr. Beasley claims

---

[1] Mr. Beasley is now confined at North Branch Correctional Institution in Cumberland, Maryland.

that the assault resulted in his middle finger being broken and a laceration to his ear. *Id.* at 3-4. Mr. Beasley states that he was thrown to the ground and "basically tackled," which caused the damage to his finger and ear. ECF No. 1-1 at 2.

In an administrative remedy procedure complaint ("ARP") filed with the complaint, Mr. Beasley attributes Officer Mozingo's response to his anger over Mr. Beasley accusing him of bringing drugs into the prison and telling him that he was no better than the inmates. ECF No. 1-1 at 2. Mr. Beasley states he was asked to repeat what he had just said and when he did, Officer Mozingo assaulted him. *Id.* As relief, Mr. Beasley seeks $250,000 in damages. ECF No. 1 at 4.

## II.   Defendant's Response

Defendant Christopher Mozingo was a correctional officer at MCTC from July 1, 2014 through October 7, 2019. ECF No. 22-3 at 1, ¶ 1. He explains that while stationed at the A tier grill, he had a short encounter with Mr. Beasley that began with ordering Mr. Beasley to lock into his cell. *Id.* at ¶ 2. He states that Mr. Beasley was yelling, and he "directed Beasley to stop yelling and to lock in," but he refused the orders and continued yelling. *Id.* Officer Mozingo gave Mr. Beasley a "direct order to return to his cell," and Mr. Beasley lunged toward him and spit at Officer Mozingo. *Id.* The spit landed on Officer Mozingo's shirt. *Id.*

According to Officer Mozingo he grabbed Mr. Beasley by the "throat area" to prevent him from continuing his assault, and he ordered him to turn around to be handcuffed. ECF No. 22-3 at 1, ¶ 2. Mr. Beasley tried to "push off by extending his arms," and Officer Mozingo let go of his throat and punched him in the face with his right fist. *Id.* Mr. Beasley then threw a punch with his right hand, striking Officer Mozingo in the face. *Id.* "Other officers arrived and Beasley was then placed on the ground so he could be handcuffed." *Id.* Mr. Beasley continued to struggle and refused to be handcuffed. *Id.* at 2, ¶ 2. Officer Mozingo "threw two punches to his right side torso

area so the inmate would release his right arm from underneath his body." *Id.* Mr. Beasley was then handcuffed and "escorted to the dispensary for a medical evaluation." *Id.*

A short time later, Officer Mozingo recalls that Mr. Beasley threatened him and his family when he was being brought down from medical to be placed in a holding cage. ECF No. 22-3 at 2, ¶ 3. Mr. Beasley said, "I'm going to kill you and your family when I get out you fat pudgy bitch." *Id.* Despite the assault and the threat, Officer Mozingo states he declined to pursue criminal charges against Mr. Beasley. *Id.* at ¶ 4.

As a result of the incident, Mr. Beasley was charged with violating the following disciplinary rules: Rule 101 (commit assault or battery on staff); Rule 104 (make threats that include using physical harm to objects, property, or individuals); Rule 312 (interfere with or resist a search of a person, item, area, or location); Rule 316 (disobey an order); and Rule 410 (demonstrate disrespect, insolence, or use of vulgar language). ECF No. 22-3 at 4-5. On July 24, 2019, Mr. Beasley pleaded guilty pursuant to a plea agreement to all the rule violations charged. ECF No. 22-5 at 24. Sanctions imposed included 80 days of segregation and revocation of 70 days good conduct credit. *Id.* at 21.

A Serious Incident Report was prepared after the July 17, 2019 incident involving Mr. Beasley and Officer Mozingo. ECF No. 22-5. The investigator's summary of the incident, written by Lt. J. Gamble, indicates that Officer Mozingo was "conversing with Lamont Beasley about job openings when inmate Beasley started yelling at Ofc. Mozingo." *Id.* at 4. At that point, Officer Mozingo ordered Mr. Beasley to return to his cell. *Id.* The remainder of the summary closely mirrors Officer Mozingo's account provided in his declaration. The conclusion Lt. Gamble made based on the investigation was that the use of force was "used in accordance with the Use of Force manual." *Id.*

Four officers responded to the fray and provided accounts of what they saw. Officer D. Wills responded to the area after he saw Officer Mozingo in a "physical altercation with inmate Lamont Beasley." ECF No. 22-5 at 9. Officer Wills grabbed Mr. Beasley by the arms and torso to prevent further attack on Officer Mozingo. *Id*. Officer C. Cline responded to the area when he saw officers had Mr. Beasley lying on the floor and assisted by holding Mr. Beasley's ankles until he was handcuffed. *Id*. at 10. Officer Myers also arrived on the scene when Mr. Beasley was lying on the floor on his stomach "struggling with the other officers." *Id*. at 11. Officer Myers provided assistance by securing his right hand and assisting with placing him in handcuffs. *Id*. Officer D. Shirley assisted with taking Mr. Beasley to the ground where he held Mr. Beasley's left arm to prevent him from harming anyone. *Id*. at 12. Officers Shirley and Myers escorted Mr. Beasley to the dispensary (*id*.) but he was "yelling obscene comments and threat[en]ing people so he could not be assessed by nursing staff." *Id*. at 11, *see also* ECF No. 22-7 (decl. of Officer Wills) and ECF No. 22-8 (decl. of Officer D. Shirley).

The July 17, 2019 incident was reported to the Department of Public Safety and Correctional Services ("DPSCS") Intelligence & Investigative Division ("IID") on the date of the incident. ECF No. 22-9 at 1. An investigation was conducted by Detective Sergeant R. Fagan and included interviews of Officers Donald Shirley and Dustin Wills as well as Mr. Beasley, and inmates Jose Romero and Ikemefuna Chukwurah.[2] *Id*. at 4-5. In addition, Det-Sgt. Fagan reviewed surveillance video of the incident. *Id*. at 6.

On July 25, 2019, Det-Sgt. Fagan met with Mr. Beasley at MCTC. ECF No. 22-9 at 6. Mr. Beasley said that he had just left Case Management when he encountered Officer Mozingo and asked him about getting a job. ECF No. 22-9 at 6. Officer Mozingo refused Mr. Beasley's

---

[2] Both Romero and Chukwurah told Det-Sgt. Fagan that they were not in the area when the incident took place. ECF No. 22-9 at 7.

request for a job and, according to Mr. Beasley, when the officer "cursed at him" he told Officer Mozingo "not to disrespect him." *Id*. Mr. Beasley then told Officer Mozingo "that he brings drugs into the Institution and he is no better than he (Beasley) is," and Officer Mozingo asked him to repeat what he had just said. *Id*. Mr. Beasley repeated his statement, and Officer Mozingo grabbed and choked him. *Id*. Mr. Beasley grabbed the officer's hand and other staff responded to the area and put Mr. Beasley on the ground. *Id*. Mr. Beasley told Det-Sgt. Fagan that Officer Mozingo and someone else punched him, and he "sustained a broken right pinkie finger." *Id*. Mr. Beasley explained he was taken to medical but "because he was hyper the nurse told staff to return him to his cell." *Id*. Mr. Beasley specifically denied spitting at or punching Officer Mozingo and maintained that Officer Mozingo "brings drugs and tobacco to other inmates." *Id*.

Det-Sgt. Fagan notes that prior to being interviewed for this investigation, Officer Mozingo submitted his resignation to the DPSCS Human Resources Office on September 23, 2019, effective on October 7, 2019. ECF No. 22-9 at 7. The reason for his resignation is "unknown." *Id*. He also notes that the surveillance video of the incident does "not provide evidence that Inmate Beasley spit on or struck Officer Mozingo." *Id*.

The surveillance video, submitted as an exhibit by Defendant, has no audio but depicts Mr. Beasley in an animated conversation with Officer Mozingo at the desk near a door that leads into the housing area. ECF 22-6 (filed separately exhibit). As Mr. Beasley walked away from Officer Mozingo, Officer Mozingo follows him and stops in the doorway with his hands grasping the door frame. Mr. Beasley is near a glass window next to the door; part of his face is obscured by the door frame. The two men appear to be engaged in an argument; however, Officer Mozingo does not appear to be agitated. They are close enough for Mr. Beasley to spit on Officer Mozingo, but it is not possible to see whether it occurred before Officer Mozingo suddenly grabs Mr. Beasley

by the throat and pins him against the window he was standing near. Mr. Beasley can be seen grabbing Officer Mozingo's arms, then Officer Mozingo throws a punch. It does not appear that Mr. Beasley punched Officer Mozingo, however it is difficult to discern based on the angles of the cameras that recorded the events. Three officers who were standing nearby came over to the area, and Mr. Beasley was taken to the floor, where he was restrained after a brief scuffle.

Mr. Beasley's medical records indicate that when he was brought to the dispensary following the incident he was "belligerent with custody and nursing, not following commands – directions" and that he was "escorted from dispensary by custody." ECF No. 23 at 2. He submitted a sick call slip on August 25, 2019, complaining that his left pinky finger was broken and indicating that it started on July 17, 2019. *Id*. at 3. Mr. Beasley was seen that day by Brandy Shade, RN, who noted that Mr. Beasley had stated that his "pinky finger on right [hand] is broken and hurts all the time." *Id*. at 4. Ms. Shade observed that the finger was swollen at the joint and ordered ibuprofen for Mr. Beasley. *Id*. He was also referred to a provider. *Id*.

In another sick call slip received on January 14, 2020, Mr. Beasley indicates that his middle finger is broken and he needed an "x-ray done so I can prove it has been broken." *Id*. at 5. He indicates that the injury occurred on July 17, 2019. *Id*. Mr. Beasley was seen again by Ms. Shade, who noted that Mr. Beasley was able to move and bend his finger, although it was noticeably curved. *Id*. at 6. She counseled him that he "should have came up when it happened." *Id*. Since he was not in acute distress, she sent him back to his housing unit. *Id*. There is no record of Mr. Beasley ever receiving an x-ray of his hand.

## Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ.

P. 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing that there is no genuine issue as to any material fact.  However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *Celotex*, 477 U.S. at 322–23.  On those issues on which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.,* the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

In this inquiry, a court must view the facts and the reasonable inferences drawn "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).  The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment.  *See Anderson*, 477 U.S. at 252.  This

Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citation omitted).

## Discussion

Defendant asserts that Mr. Beasley's claim does not amount to an Eighth Amendment violation and that Defendant is entitled to avail himself of a qualified immunity defense. ECF No. 22. Specifically, Defendant asserts he acted in self-defense when he grabbed Mr. Beasley by the throat and punched him.

### I. Eighth Amendment Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. at 38.

The Supreme Court abrogated those cases issued by the Fourth Circuit Court of Appeals which held that more than de minimus injury is necessary to proceed in an Eighth Amendment claim. *Wilkens v. Gaddy*, 599 U.S. 34 (2010) (holding the core judicial inquiry when a prisoner

alleges excessive force is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm). Thus, whether Mr. Beasley sustained a broken finger or not, the focus for the Eighth Amendment claim is whether there was a good faith reason to believe that the force used was necessary to restore discipline.

Mr. Beasley does not deny yelling at Officer Mozingo, nor does his opposition response include a denial that he refused to obey direct orders to go back to his cell. ECF No. 28. He does deny, however, assaulting Officer Mozingo by spitting on him or punching him in the face. *Id*. The video surveillance does not support Officer Mozingo's claim that he was acting in self-defense when he grabbed Mr. Beasley by the throat and punched him in the face.[3] Assuming that Mr. Beasley did not engage in such conduct, the question remains whether the conduct Mr. Beasley does not deny engaging in (yelling and refusing to obey a direct order) was sufficient cause for Officer Mozingo to employ the force used, *i.e.*, grabbing him by the throat and punching him in the face. Whether the force used was justified or it was a malicious use of force requires a credibility determination inappropriate for a summary judgment motion. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986) ("Credibility determinations . . . are jury functions, not those of a judge . . . ").

## II. Qualified Immunity

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "In particular, . . . qualified immunity protects law officers

---

[3] The Court notes the distinct possibility that Mr. Beasley's act of spitting on Officer Mozingo was not captured by the surveillance cameras.

from 'bad guesses in gray areas,' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). The defense provides protection for public officials for mistakes of law, mistakes of fact, or a combination of the two. *See Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting). Qualified immunity is a defense from suit, not simply liability, which is lost if a matter is improperly permitted to go to trial. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Resolution of whether an official is entitled to qualified immunity must be determined "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In order to determine if a public official is entitled to the protections afforded by qualified immunity, two inquiries must be addressed by this Court. Although the Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194 (2001) directed a rigid approach to the inquiries involved, the requirement that the two-prong analysis must be "considered in proper sequence" has since been revised. *Katz*, 533 U.S. at 200. Courts are now "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 818.

The first prong is whether ""[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. If the evidence establishes a violation of a constitutional right, the second prong is to assess whether the right was "clearly established" at the time of the events at issue. *Id*. If the right was not clearly established, the qualified immunity doctrine shields a defendant officer from liability. The "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds." *Henry v.*

*Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007) (citing *Batten v. Gomez*, 324 F.3d 288, 293-94 (4th Cir. 2003)). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *Dist. of Columbia v. Wesby*, – U.S. –, 138 S. Ct. 577, 589 (2018) (citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Here, Mr. Beasley's claim that he was physically assaulted by Officer Mozingo in response to an accusation that the officer was smuggling contraband into the prison supports a finding that the Eighth Amendment was violated. The prohibition against the use of excessive force on a prisoner was clearly established at the time of the incident. The qualified immunity defense therefore fails.

## Conclusion

For the reasons outlined above, Defendant's Motion to Dismiss or for Summary Judgment shall be denied. Defendant shall file an Answer to Mr. Beasley's Complaint on or before February 15, 2021. Counsel shall be appointed for Mr. Beasley, after which a discovery and scheduling order will be issued.

A separate Order follows.

January 29, 2021  
Date

/S/  
Paul W. Grimm  
United States District Judge